IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Richard Arana, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | Case No. 13 CV 50204 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|    *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Arana, brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying him social security disability benefits. For the reasons set forth below, the decision is affirmed.

### I. BACKGROUND[1]

On November 5, 2010, Plaintiff filed an application for supplemental security income, alleging a disability beginning on November 1, 2010. R. 137-148. He was 46 years old at the time of the alleged onset date and last worked in 2002. R. 137, 142. On April 2, 2012, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 24-58. The same attorney representing Plaintiff in this action also represented him at the hearing. Plaintiff and Vocational Expert Stephen Porter ("VE") testified at the hearing.

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.

1

At the hearing, Plaintiff testified that he was single and lived in public housing by himself. R. 28-30, 41-42. He had a driver's license, but did not have a vehicle. R. 31. His mother took him to his appointments and shopping. R. 43. He completed two years of college courses. R. 31. Plaintiff was an air traffic controller in the army from 1982 until 1985. R. 32. Plaintiff has not worked since 2002. R. 32. He stopped working because he was rear-ended in a car accident in 2002. R. 33, 48. After the car accident, Plaintiff started having neck problems. R. 48. Plaintiff was unable to return to work because he had trouble sleeping. R. 37. Plaintiff explained that there were days when he could not get out of bed due to head and neck pain from canal stenosis, and he also stated that he did not like being around people. R. 37. He testified that he had an anger problem and would sometimes get angry at people in public. R. 45. He also stated that he would put a bucket near his bed so he would not have to get up to go to the bathroom. R. 37. Plaintiff would sometimes go days without sleeping. R. 43-44. A week or two before the hearing, Plaintiff did not sleep for three days. R. 44.

Plaintiff was able to cook and do dishes, but would often take breaks due to pain or his attention span. R. 39, 45. He had a problem concentrating because he would lose interest. R. 46. Plaintiff's mother did his grocery shopping for him because he could not carry groceries. R. 40. Plaintiff could lift a gallon of milk, but could not carry it. R. 44. Plaintiff testified that he tried to walk 20 minutes around his block every day. R. 40-41. Plaintiff testified that he met with a counselor through the Veterans Administration once a month. R. 42. He was recently put on

Zoloft, but it was too early to tell if it was helping. R. 42. Plaintiff testified that in March 2012, he was unable to get out of bed six days due to depression or pain. R. 43. Plaintiff testified that his work history consisted of maintenance work on industrial machines from 2000 until 2002, installation worker from 1998 until 2000 and a factory worker from 1996 until 1998. R. 33-35.

The VE testified that Plaintiff's past relevant work consisted of work as a material handler and an industrial cleaner. R. 50-51. In response to the ALJ's hypothetical claimant who could only perform light work with occasional stooping and crouching and occasional interaction with the public and coworkers, the VE opined that the claimant could not perform any of Plaintiff's past-relevant work, but could still perform the jobs of final assembler, automatic machine operator and overnight stocker. R. 54. This was not true if the claimant could only perform occasional rotation, flexion or extension of the neck. R. 55. In response to questions by Plaintiff's counsel, the VE testified that if an individual were to miss two days of work a month, he could probably maintain employment. R. 58. However, there would be no work for an individual who missed three days of work a month. R. 58.

On April 26, 2012, the ALJ issued his ruling finding that Plaintiff was not disabled. R. 11-19. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, depression and antisocial personality disorder. R. 13. The ALJ found that Plaintiff's impairments did not meet or medically equal a listing impairment, specifically Listings 1.04, 12.04 and 12.08. R. 13-15. With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff

3

did not satisfy the paragraph B criteria or paragraph C criteria. R. 13. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: occasional stooping and crouching and occasional interaction with coworkers and the public. R. 15. Based on the VE's testimony, the ALJ determined that Plaintiff could not perform any past relevant work, but had the RFC to perform the job of final assembler, automatic machine operator and overnight stocker. R. 18-19.

## II. LEGAL STANDARDS

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of

4

the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). "In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence … – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusion." *Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded because the ALJ failed to sufficiently explain why Plaintiff's impairments did not meet or equal the criteria for: (1) disorders of the spine under Listing 1.04(A); and (2) affective disorders under Listing 12.04.

Before addressing the merits of this appeal, the Court must first address the Commissioner's argument regarding waiver. *See* Dkt. 23 at 1 n.1. The Commissioner takes issue with the fact that Plaintiff only cited to 13 pages from the record to support his arguments in his opening brief, and therefore, argues Plaintiff has forfeited the right to cite to additional support in his reply brief. The Commissioner is correct that perfunctory and underdeveloped arguments are forfeited on appeal. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 719 (7th Cir. 2012).

The Court notes that Plaintiff's opening and rely briefs are drastically different. In his opening brief, Plaintiff merely outlined several underdeveloped arguments and provided minimal citations to the record and zero analysis of those

5

records.  In light of this, the Court came close to finding Plaintiff's arguments forfeited.  However, in the interest of justice and because forfeiture would not affect the outcome of this appeal, the Court will consider Plaintiff's elaboration on his arguments in his reply brief, including additional citations to the record, in determining this appeal.

**A. Listing 1.04(A)**

The ALJ evaluated Plaintiff's impairments under Listing 1.04 generally; however, the Court will specifically focus on the ALJ's findings in relation to subsection 1.04(A).  This is the subsection of the listing Plaintiff claims he satisfied based on the condition of his cervical spine.  Listing 1.04 describes disorders of the spine, including spinal stenosis and degenerative disc disease, that result in compromise of a nerve root or the spinal cord.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Subsection A of the listing additionally requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[.]"[2]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

In determining that Plaintiff's degenerative disc disease did not meet the criteria for Listing 1.04(A), the ALJ concluded that there was "no evidence of nerve root compression accompanied by sensory or reflex loss[.]"  R. 13.  Although the

---

[2] Listing 1.04(A) also requires "positive straight-leg raising test (sitting and supine)" if there is involvement of the lower back; however, Plaintiff only argues that he satisfied this listing based on the condition of his cervical spine.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

ALJ's analysis at step three is limited to the above quoted language, he provided additional findings in his RFC determination. In particular, the ALJ stated that Plaintiff's MRIs from 2008 "revealed degenerative disc disease but no critical areas of stenosis." R. 16. Plaintiff takes issue with the ALJ's finding that there were no "critical areas of stenosis" because his 2008 cervical spine MRI revealed "[p]rominent right uncovertebral hypertrophy results in moderate to severe right neural foraminal narrowing." R. 371. However, even with this evidence of narrowing of the spine and the openings for the nerves and other evidence of degenerative disc changes and disc space narrowing that can cause compressed nerve roots, Plaintiff has not pointed to any evidence that his nerve root was compressed, as required under Listing 1.04(A). In fact, a medical note referencing the 2008 MRI also noted that despite evidence of narrowing, there were "[n]o severe areas of stenosis." R. 318.

As the ALJ found, there is no evidence in the record identifying nerve root compression from any narrowing in the spine or the opening for the nerves. *See* R. 371 (2008 cervical MRI: revealing mild to moderate degenerative disc disease, but no mention of nerve root compression, except that the nerve root was not compromised at C3/4); R. 471 (2011 cervical x-ray: revealing disc space narrowing and mildly progress degenerative disc changes, but no indication of impaired nerve roots). The ALJ further pointed out that Plaintiff's 2011 cervical x-ray "revealed degenerative disc disease of the cervical spine with only mild progression when

7

compared to 2007 studies."[3]  R. 16, 471.  Again, the 2011 x-ray made no mention of any nerve root compression.  *See* R. 471-72.  Therefore, Plaintiff's reliance on *Kastner v. Astrue*, 697 F.3d 642 (7th Cir. 2012), to assert he has met Listing 1.04(A) is unpersuasive, because the plaintiff's medical records in *Kastner* specifically revealed that Plaintiff had compressed spinal nerves in addition to spinal stenosis. *Id.* at 645.

Nevertheless, even assuming Plaintiff has identified some evidence that a spinal nerve root was compressed, the ALJ properly concluded that he failed to satisfy the requirement of motor loss accompanied by sensory or reflex loss. Plaintiff only cites to his subjective complaints regarding tingling and numbness in his left hand and fingers to support sensory loss.  *See* R. 323, 340, 367 (duplicate note from R. 340), 609, 753.  However, even the June 2010 physical examination by his treating physician, which is part of the same medical record that Plaintiff cites for support, indicates that despite Plaintiff's subjective complaints, he exhibited normal sensation and motor strength.  *See* R. 325.  Plaintiff then argues that the "ALJ cannot ignore the findings of [Plaintiff's] treating physician," but provides no further explanation or support for this argument.  Dkt. 24 at 5.  Because Plaintiff's treating physician's examination is not in conflict with the ALJ's decision, the Court finds Plaintiff's conclusory and underdeveloped argument to be without merit.

Additionally, as the ALJ pointed out, Plaintiff underwent an EMG in 2008 because Plaintiff was complaining of tingling in his arms and hands.  R. 317.  The

---

[3] Plaintiff also references a 2011 MRI, which was actually an x-ray that the ALJ appropriately referenced. *See* R. 16, 471-72.

8

EMG was "completely normal." R. 317. Despite Plaintiff's complaint that the ALJ referenced a 2008 EMG that was not in the record, there were medical notes from Plaintiff's providers interpreting this EMG. *See* R. 317, 609.

Even the June 2010 pain clinic examination that Plaintiff cites to support motor loss with limited upper extremity reflexes is not so conclusive. This medical record states that Plaintiff's "[u]pper extremity reflexes are 1+ and symmetric with a negative Hoffman[,]" indicating that Plaintiff's reflexes were just below normal and the Hoffman test was negative for spinal cord compression. R. 722. The note further reveals that Plaintiff had "chronic axial spine pain due to multilevel degenerative disc disease," but Plaintiff did "not describe any current radicular symptoms" and he did not "have any myelopathic signs or symptoms," which could be symptoms of a compromised nerve root. R. 723. The ALJ also noted that in August 2010, Plaintiff was discharged from the pain clinic after he "reported a positive response to medications and noted an average pain level of only two to three out of ten." R. 16, 289-90; *see also* R. 305, 434 (June and September 2010 psychiatry notes revealing that Plaintiff reported "[h]is pain is well treated at this point."). The ALJ also correctly noted that after being discharged from the pain clinic, there was no evidence that Plaintiff sought further treatment for his cervical spine issues, other than maintaining his narcotic medication prescriptions for his pain. *See* R. 16, 516-17, 659-60; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D) (stating that abnormal physical findings may be intermittent, but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms

9

over a period of time, as evidenced by a record of ongoing management and evaluation).

Moreover, a more recent 2011 consultative examination from the state-agency reviewing physician reported that Plaintiff's gait was normal and unassisted, he was able to walk on his heels and toes and squat, his grip strength was 5/5 in both hands, and his motor strength was 5/5 in all four extremities with no sensory deficits and normal reflexes. R. 207; *see Kastner*, 697 F.3d at 650 ("Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss." (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1))).

Therefore, contrary to Plaintiff's assertions, the ALJ did not "cherry-pick" from the records, but instead reviewed all the substantial evidence in the record and cited specific reasons for finding that Plaintiff did not satisfy the requirements under Listing 1.04(A). *See Martinez v. Colvin*, No. 12 CV 50016, 2014 U.S. Dist. LEXIS 41754, at *30 (N.D. Ill. Mar. 28, 2014) ("The Court stresses that having reviewed the entire record it is clear that the ALJ did not cherry pick the medical records, looking for evidence contrary to the Claimant's allegations… Instead, the record presented shows consistent evidence of the Claimant's stability." (internal citations omitted)). Although Plaintiff's medical records may provide evidence that he suffered some of the symptoms included in Listing 1.04(A), such as a limited range of motion in his spine, there is substantial evidence to support the ALJ's

determination that Plaintiff did not meet Listing 1.04(A), because he failed to meet *all* of the necessary requirements.

**B. Listing 12.04**

Plaintiff next argues that the ALJ wrongfully determined that his depression did not meet Listing 12.04 for affective disorders. In determining whether a claimant has a medically determinable mental impairment under Listing 12.04(A)(1), the ALJ must evaluate whether the claimant has a depressive syndrome that results in at least four of the listed symptoms, which is the paragraph A criteria.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)(1). In addition to meeting the requirements of paragraph A, the claimant must also satisfy the paragraph B criteria by demonstrating that the impairment resulted in a least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). A marked limitation means more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

Here, the ALJ found that Plaintiff suffered from depression, which he found to be a severe impairment. R. 13. However, in evaluating the requirements for Listing 12.04, the ALJ found that Plaintiff did not meet the paragraph B criteria for

---

[4] The symptoms under paragraph A include: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight; (3) sleep disturbance; (4) psychomotor agitation or retardation; (5) decreased energy; (6) feelings of guilt or worthlessness; (7) difficulty concentrating or thinking; (8) thoughts of suicide; or (9) hallucinations, delusions or paranoid thinking.

11

Listing 12.04. Specifically, the ALJ found that Plaintiff had no more than a mild limitation in his activities of daily living and concentration, persistence or pace, no more than moderate difficulties in his social functioning and no episodes of decompensation. R. 14.

Plaintiff argues that the ALJ engaged in a selective review of the evidence to determine that he did not satisfy Listing 12.04. In his opening brief, Plaintiff cites to his outpatient psychiatry note from March 2011 (R. 522) to assert his diagnosis for major depressive disorder and post-traumatic stress disorder (PTSD). Dkt. 13 at 5. He also cites this note to assert that he "has been noted to have visual hallucinations, flashbacks, decrease in sleep, decrease in appetite, socially isolating, inappropriate affect, and poor hygiene." Dkt. 13 at 5; *see also* Dkt. 13 at 3. Plaintiff contends that the ALJ "completely ignores" this evidence. *Id.*

First, the medical note Plaintiff cites (R. 522) to assert that he has suffered from the symptoms listed above makes no mention of hallucinations, flashbacks, inappropriate affect or poor hygiene. R. 521-24. Furthermore, the note mentions Plaintiff's appetite, but for the opposite conclusion he asserts. The note provides that Plaintiff's "[a]ppetite is stable," and he "is gaining weight due to more sedentary life style." R. 522. In his argument section, Plaintiff cites the record in support of his symptoms as "Tr. 522 improve," but without any further explanation, it is unclear which records actually support Plaintiff's assertions. *See* Dkt. 13 at 5.

Second, Plaintiff cites the same medical note to assert his diagnosis for depression and PTSD. As the Commissioner points out, this medical note does not

12

mention any diagnosis for depression or PTSD. Instead, the note reflects a diagnosis for an anxiety disorder (R. 521) and a previous diagnosis of depression, noting that on the day of the evaluation, Plaintiff was "not endorsing significant depressive symptoms." R. 523. The Court understands that counsel will present the record in the light most favorable to their client's claims; but counsel cannot present the record with material misstatements of fact. Such an approach puts the burden on the Court to sort through the record to make sense of unsupported statements. *See Martinez*, No. 12 CV 50016, 2014 U.S. Dist. LEXIS 41754, at *26-27 ("[P]arties should not view judges as bloodhounds who are merely given a whiff of an argument and then expected to search the record high and low in an effort to track down evidence to locate and capture a party's argument." (citing *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013))).

Despite Plaintiff's misleading citations to the record, his previous medical notes reflect a diagnosis for depressive disorder. R. 280, 305. Nevertheless, this diagnosis by itself does not support Plaintiff's claims. For a claimant's condition to meet or equal a listing impairment, the claimant must meet *all* of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. § 404.1525(d). This is particularly true here. The ALJ determined that although Plaintiff had a severe mental impairment, Plaintiff did not satisfy the paragraph B criteria for Listing 12.04. The ALJ specifically evaluated each of the four paragraph B criteria and explained his reasoning in

13

relation to the relevant medical records. The Court finds that the AJL's conclusion at step three is supported by substantial evidence.

Plaintiff further complains that the ALJ did not consider Plaintiff's low Global Assessment of Functioning (GAF) and Patient Health Questionnaire (PHQ-9) scores. Dkt. 13 at 5. In his reply brief, Plaintiff asserts that these low scores indicate his marked difficulties in maintaining social functioning and activities of daily living, which would satisfy the paragraph B criteria. Dkt. 24 at 6. However, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal citations and quotations omitted); *see also Anthony v. Astrue*, No. 09-3252, 2010 U.S. Dist. LEXIS 113807, at *35 (C.D. Ill. Oct. 26, 2010) ("The ALJ is not required to specifically address GAF scores, which are intended to be used to make treatment decisions, … not as a measure of the extent of an individual's disability." (internal quotations marks and citations omitted)). Although the ALJ did not discuss these scores in particular, only two of the assessments occurred after his alleged onset date of November 1, 2010. *See* R. 305 (GAF of 50 in June 2010); R. 415 (PHQ-9 score of 24 in December 2010); R. 434 (GAF of 50 in September 2010); R. 521 (GAF of 60 in March 2011); R. 708 (GAF of 50 in June 2010); R. 734 (GAF of 50 in April 2010); R. 800 (GAF of 50 in December 2009). Furthermore, Plaintiff does not indicate how these scores would have affected the ALJ's paragraph B criteria findings. *See Denton*, 596 F.3d at 425 (explaining that a GAF score does not necessarily reflect a

14

doctor's opinion of functional capacity because the score measures both the severity of symptoms and functional level). Additionally, Plaintiff cites no controlling authority that the ALJ must consider PHQ-9 scores.

Other than his low scores and subjective complaints of appetite and sleep disturbance and paranoid thinking, Plaintiff points to no other medical evidence to show that he had marked limitations in activities of daily living and social functioning, or that he satisfied the other paragraph B criteria. Plaintiff seems to suggest that the ALJ's failure to discuss his scores and certain symptoms highlights the ALJ's failure to consider other favorable evidence to Plaintiff. Plaintiff also cites to *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013), to assert that the ALJ should have discussed Plaintiff's GAF scores within the context of his mental status examinations. The Court finds *Bates* distinguishable, because in that case the ALJ ignored favorable evidence from the record, which included GAF scores suggesting a low level of functioning. *Id.* Here, however, Plaintiff does not indicate the medical records that the ALJ ignored and how these records would show that he satisfied the paragraph B criteria for Listing 12.04.

Plaintiff also fails to address the fact that the ALJ's determination of his paragraph B criteria was consistent with the February 2011 Psychiatric Review Technique, in which the state-agency psychiatrist, Dr. Leslie Fyans, found that Plaintiff had mild limitations in activities of daily living and maintaining concentration, persistence or pace and moderate limitations in social functioning. R. 483. *See Jones v. Colvin*, No. 09 C 7645, 2013 U.S. Dist. LEXIS 50382, at *38-41

15

(N.D. Ill. Apr. 8, 2013) (finding no error in not considering GAF because the ALJ considered the other evidence in the record). In Plaintiff's Mental Residual Functional Capacity from February 2011, Dr. Fyans also determined that Plaintiff had almost no limitations in his understanding and memory, concentration and persistence, social interaction and adaption. R. 487-88. Dr. Fyans only found Plaintiff partially credible because his mental status and functioning were adequate and normal, despite his complaints of pain and antisocial personality disorder. R. 489.

The ALJ also considered Plaintiff's most recent mental health treatment note from March 2011, which revealed that Plaintiff reported anxiety when around large groups, but that his stress was often sporadic and did not have a significant impact on his functioning. R. 522-24. As noted by Plaintiff, this medical note reported that Plaintiff had a GAF score of 60. R. 521. The ALJ also discussed a recent consultative examination from February 2011. R. 14. This examination revealed that while Plaintiff was dependent on his mother because she washed his clothes and took him to the grocery store and doctor appointments, Plaintiff was still able to cook, shower, exercise about 20 minutes a day, walk around the block and play his guitar and video games. R. 468-69.

Plaintiff has the burden to show that his impairments met or equaled the requirements of a listed impairment. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (stating that the claimant has the burden in steps one through four); *Wilkins v. Barnhart*, 69 F. App'x 775, 781 (7th Cir. 2003) (stating that an ALJ is

entitled to assume that a claimant represented by counsel is making his strongest case for benefits). Despite Plaintiff's contention that the ALJ failed to provide sufficient explanation of his denial at step three, this Court finds the ALJ's decision was adequately explained and supported by substantial evidence. Accordingly, this Court finds that remand is not warranted on these grounds.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (Dkt. 13) is denied, and the Commissioner's motion (Dkt. 23) is granted. The decision of the ALJ is affirmed.

Date: July 24, 2015          By: _____
                                  Iain D. Johnston
                                  United States Magistrate Judge